ESTATE OF PAULINE E. NOCK, DECEASED, BARBARA ANN LYTLE, ADMINISTRATRIX, WITH WILL ANNEXED, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7258–65. Filed December 26, 1967.

*Robert N. Dineen,* for the petitioner.
*Donald H. Richards,* for the respondent.

OPINION

The parties are not in complete agreement as to the issues presented but they are agreed that the principal issue should be determined by deciding whether or not John S. Nock would have been required to recognize ordinary income if he had exercised his restricted stock option on the date of his death, December 1, 1960. If on that day he could not have qualified for the no-income treatment provided for by subsection 421(a) of the Internal Revenue Code of 1954,[1] then his widow, Pauline, could not so qualify.

At the date of his death on December 1, 1960, John held an unexercised restricted stock option to purchase 1,000 shares of United States Steel common stock at $18.50 a share. Under section 421(d)(6) a person who acquires a restricted stock option by inheritance or bequest is afforded the same tax treatment upon its exercise as the deceased employee; it is undisputed that Pauline, John's widow, qualifies for this identical treatment under section 421(d)(6). The principal issue here is therefore controlled by the provisions of section 421 as it existed in 1961 when the stock option here involved was exercised by Pauline after John's death.

---

[1] All Code references hereinafter made are to the Internal Revenue Code of 1954 unless specifically otherwise stated and references to sec. 421 shall be to that section as it existed prior to amendment by the Revenuue Act of 1964 unless otherwise specified.

By the Revenue Act of 1950, Congress added new section 130A to the 1939 Code affording special no-income treatment for exercising employee incentive stock options under certain limited conditions if they met the definition of "a restricted stock option." [2] The legislative history indicates that the beneficial provisions were to apply if the restricted option were exercised while the grantee was still an employee of the granting employer or within a period of 3 months following termination of his employment. S. Rept. No. 2375, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 526; H. Rept. No. 3124, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 586. This provision was reenacted without substantial change as section 421 of the 1954 Code, with the addition of a paragraph (6) to subsection (d), and as effective in 1961 the pertinent portions are set forth below.[3] The statute specifically excludes application of the relief afforded if the optionee is not an employee of the corporation which granted the option at the time of its exercise unless he exercises it "within 3 months after the date he ceases to be an employee" of such corporation. Section 421(d)(6)(A) then extends the relief from taxability after death of an employee to persons who acquire restricted stock options by bequest "to the same extent as if the option had been exercised by the decedent" eliminating the employment requirements of subsection (a).

Paragraph (6) of subsection (d) of section 421 was added by the 1954 Code and the legislative intent is set forth in H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. (1954), as follows:

Under present law the tax treatment of the exercise of a "restricted stock option" after the death of an employee is not provided for even though "restricted

---

[2] There is no question but that the option held by John at his death qualified as a "restricted stock option."

[3] SEC. 421. EMPLOYEE STOCK OPTIONS.

.(a) TREATMENT OF RESTRICTED STOCK OPTIONS.—If a share of stock is transferred to an individual pursuant to his exercise after 1949 of a restricted stock option, and no disposition of such share is made by him within 2 years from the date of the granting of the option nor within 6 months after the transfer of such share to him—

ι(1) no income shall result at the time of the transfer of such share to the individual upon his exercise of the option with respect to such share;

  *       *       *       *       *       *       *

This subsection and subsection (b) shall not apply unless (A) the individual, at the time he exercises the restricted stock option, is an employee of * * * the corporation granting such option * * * or (B) the option is exercised by him *within 3 months after the date he ceases to be an employee of such corporations.* * * *

  *       *       *       *       *       *       *

(d) DEFINITIONS. * * *

  *       *       *       *       *       *       *

(6) Exercise by estate.—

    (A) IN GENERAL.—If a restricted stock option is exercised subsequent to the death of the employee * * * by a person who acquired the right to exercise such option by bequest * * * *the provisions of this section shall apply to the same extent as if the option had been exercised by the decedent,* except that—

      (i) the * * * employment requirements of subsection (a) shall not apply, * * *
    [Emphasis added.]

stock options" are transferable by will. Your committee believes that the untimely death of an employee should not penalize his estate or beneficiaries by denying an option the status of a "restricted stock option" merely because of the employee's death. For that reason the bill provides that the exercise of "restricted stock options" by the estate or beneficiary of a deceased employee is to have the same tax effect as if the employee had exercised the option. * * *

The petitioner insists that Nock could have exercised the option on December 1, 1960, and reaped the benefits of section 421 at that time, whereas respondent insists that he could not. Petitioner urges us to conclude that Nock ceased to be an employee of United States Steel on September 1, 1960; that that day should not be counted in computing the 3-month period specified in section 421, and that therefore on December 1, 1960, Nock could have exercised his restricted stock option and obtained the no-income treatment afforded employees who exercise such options "within 3 months after the date" they cease to be employees. We agree with petitioner.

Although Nock's applications for pensions requested that he be retired on August 31, 1960, instead of September 1, 1960, this was merely to comply with the pension fund rules specifying that the first installment of any pension granted under United States Steel's pension fund shall be payable for the first full calendar month following the month in which retirement occurs. To conform to the already typed portion of the application indicating his retirement date as August 31, 1960, and to make sure that his pensions would begin when his wages stopped, the retirement date was specified as August 31, 1960. However, it was specified repeatedly that Nock would be paid *through* August 31, 1960, and that his employment would continue through that date. We conclude and hold that he was an employee of United States Steel through August 31, 1960, and ceased to be such an employee on the following day, September 1, 1960.

The parties agree and we concur that under the proper rule to be applied in computing the 3-month period specified by section 421, the day upon which Nock ceased to be an employee is to be excluded and the last day of the 3-month period is to be included. *Sheets* v. *Selden's Lessee*, 2 Wall. 177, 190 (1864); *Harriet M. Hooper*, 26 B.T.A. 758 (1932); Rev. Rul. 66-5, 1966-1 C.B. 91. Excluding September 1, 1960, and including December 1, 1960, the day of Nock's death, it is clear and we hold that Nock's right to benefit by the no-income treatment afforded by section 421 had not expired on December 1, 1960, the end of 3 months after the date he ceased to be an employee of United States Steel. As we interpret the statutory requirement Nock could have exercised his option on August 31, 1960, the day through which he was employed by United States Steel or at any time within 3 months *after* September 1, 1960, the date he ceased being such an employee. On the day that he died, December 1, 1960, he still could have exercised the option and qualified for section 421 treatment.

Respondent contends that under his regulations, sections 1.421–3(b)(1) and 1.421–5(d)(1), an optionee must be a bona fide employee of the granting corporation at the time he exercises the option or within 3 months prior thereto, and in the case of a legatee that the optionee must have been an employee "at the time of his death or within three months before such time." Applying this analysis of the regulations to the facts of the instant case, he asserts that Nock was not an employee of United States Steel on the date of his death, December 1, 1960, nor had he been such an employee within the 3 months immediately before that date.

Petitioner candidly admits that if the strict and exact language of the regulations is applied without reference to the statutory language itself, Nock would be deprived of section 421 treatment as of the date of his death, and likewise his widow would not qualify for the no-income benefit of 421. Petitioner argues that the legislative history and the statutory language itself should control and the regulations be construed in harmony therewith; that the law does not require that an optionee be an employee within the 3-month period before the option is exercised; and that the sole statutory requirement is that the option be exercised within 3 months *after* the employee ceases to be employed by the granting corporation. She points out that two entirely different tests or criteria are established and that she loses 1 day if the regulations alone are applied and is thus improperly deprived of section 421 benefits granted by the statute.

Nowhere in the legislative history, in the statute itself or in the regulations is there a suggestion that the regulations were intended or designed to reduce the period "three months after the date he ceased to be an employee" by 1 day or any other period of time. Indeed, respondent himself has recognized that in applying section 421(a) of the Code prior to 1964, the result argued for by petitioner follows. In Rev. Rul. 66–5, 1966–1 C.B. 92–93, the following statement appears:

Section 421(a) of the Code, as then in effect, provides for certain Federal income tax results if, among other requirements, an option is exercised by the employee *within 3 months after he ceases to be an employee* of the grantor * * *

It is long and well established that, in computing a period of "years" or "months" prescribed in a contract or statute, "from" or "after" a designated day, date, act, or other event, the day thus designated is excluded and the last day of the prescribed period is included, unless a different intent is definitely evidenced. * * *

 \*       \*       \*       \*       \*       \*       \*

the principles enunciated above are applicable in determining the 3-month * * * [period] referred to in section 421(a) of the Code as in effect prior to the enactment of section 221(a) of the Revenue Act of 1964. Thus, for example, if an individual ceases to be an employee on April 30, 1963, the last day of the 3-month period thereafter would be July 31, 1963, * * *

This revenue ruling nowhere even suggests the construction of the statute here urged by respondent to reduce the time allowed by applying the computation method prescribed by the regulations. We cannot accept respondent's argument that we should construe the statutory language of section 421 by a literal reading of the narrow language of the regulations standing alone. We conclude that any conflict between the clear provision of the statute and the regulations was inadvertent and unintentional, and, accordingly, we interpret the regulations to permit section 421 treatment as the statute itself directs if any optionee exercises his option within 3 months after he ceases to be an employee of the granting corporation. If an employee has ceased to be an employee within the 3-month period before the date of exercise of the option, the statute and the regulations applied together should result in the same tax treatment.

If we thus apply the statutory language and the regulations in the light of the legislative history quoted at length hereinabove (S. Rept. No. 2375, *supra;* H. Rept. No. 3124, *supra*), we are persuaded that petitioner's arguments here must prevail. Since John Nock ceased to be an employee of United States Steel on September 1, 1960, and since he died thereafter on December 1, 1960, he could have obtained the benefits of section 421(a) if he had on that day exercised his option; the last day of the 3-month period after he ceased to be a United States Steel employee was December 1, 1960, not November 30, 1960, and he ceased to be an employee of United States Steel within 3 months before he died.

This interpretation of the statute and seemingly inconsistent and restrictive regulatory provisions, is in apparent accord with the congressional understanding of the meaning of section 421. When that section was modified and portions thereof reenacted as section 424 of the Code by the Revenue Act of 1964, the legislative history reflects congressional understanding and belief that the statute and the regulations here involved are properly so interpreted. Section 424(a)(2), as enacted by the 1964 Revenue Act, provides that 421(a) shall apply if at the time the optionee exercises a restricted stock option he is an employee of the granting corporation or "he ceased to be an enmployee * * * within the 3-month period preceding the time of exercise." This is regarded by Congress as meaning the same thing as was meant by the preexisting language of the statute as interpreted by the regulations in question. H. Rept. No. 749, 88th Cong., 2d Sess. (1963), 1964–1 C.B. (Part 2), 326, reads, in part, as follows:

*Employment requirement*

   *Paragraph (2) of section 424(a) is identical with the employment requirement of the existing section 421(a) and requires that the individual be an employee* of the granting corporation, its parent or subsidiary corporation, or a corporation or its parent or subsidiary corporation issuing or assuming a stock option in a

transaction to which section 425 (a) applies, *at the time the option is exercised, or within the 3-month period preceding the date of exercise.* [Emphasis added.]

We conclude and hold that an optionee is entitled to benefit by section 421 if he has not ceased to be an employee of the granting corporation for more than 3 months prior to his exercise of a restricted stock option. This interpretation is in accord with the statutory language that section 421 shall not apply unless the option is exercised "within 3 months after the date he ceases to be an employee" and does not result in reducing the time specified by the statute itself. Applying it to the facts here, Nock would have been entitled to section 421 benefits if he had exercised his option on December 1, 1960, the date of his death. He had ceased to be an employee of United States Steel on September 1, 1960. Until 3 months *thereafter* had passed, which period would include December 1, he qualified for section 421 treatment if the statutory language alone is applied. See Rev. Rul. 66–5, *supra.* Likewise Nock had ceased to be an employee within 3 months before December 1, 1960, so that applying the statute and regulations as thus interpreted, the same result follows and section 421 applies.

The provisions of section 421 (d) (6) (A) (i) of the Code, providing that the holding period and employment requirements of subsection (a) shall not apply in the case of the exercise of an option by a legatee, do not lift the other restrictions of section 421 (a). The subsection itself and the legislative history previously set forth dictate the conclusion that a legatee or heir seeking the benefit of section 421 (a) stands in the shoes of the deceased optionee and can qualify only "to the same extent as if the option had been exercised by the decedent."

Since we have concluded that Nock had the right to exercise the restricted stock option he received on August 26, 1953, until December 1, 1960, the no-income treatment afforded by section 421 (a) of the 1954 Code was available, either to him, if he had lived throughout that date, or to his wife who inherited his option rights. *McTighe* v. *United States*, 187 F. Supp. 606 (1960). We therefore conclude and hold that Pauline Nock, John's legatee, was entitled to the "no income" benefit granted by section 421 (d) (6), when on January 13, 1961, she exercised the stock option she inherited from her husband. The respondent's determination denying section 421 treatment to her cannot be sustained.

Having reached the conclusions already stated as to the principal issue, it is not necessary to determine the amount of gain in issue because Pauline's exercise of John's stock option qualifies for section 421 treatment. However, the various other adjustments made by respondent in his deficiency notice must be recomputed in accordance with the views expressed herein. To provide for such necessary adjustments,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

SIMPSON, *J.*, dissenting: I must dissent from the interpretation of the statute adopted by the majority. It is unfortunate that the outcome of this case turns on 1 day. However, whenever the qualification for some favorable tax treatment turns on whether the taxpayer acts before a specified day or before the expiration of a specified period— and the tax laws contain innumerable provisions of this type—some lucky taxpayers are going to qualify by just 1 day; whereas, less fortunate taxpayers are going to miss by a single day. Such consequences must have been anticipated by the lawmakers when they adopted such a limitation. When the statute uses a general standard, we must use reason and judgment in its construction and application; but when the statute is precise and definite, our compassion for the less fortunate gives us no authority to extend the statutory time for qualifying for the favorable tax treatment.

The statutory provision which was applicable in the circumstances of this case made the qualification for the favorable tax treatment of the option depend upon whether a retired employee exercised the option within 3 months after the day on which he ceased to be an employee. The majority finds as a fact that John ceased to be an employee on September 1, 1960. However, I believe that this conclusion results from the application of an erroneous interpretation of the statute to the evidence in the case. Webster's New International Dictionary (3d ed. 1961) states "to cease" means "bring to an end * * * to come to an end * * * to bring to an end an activity or action." Since John was not able to work during August of 1960, the time when his employment ended must be determined solely from the intention of the parties. There is some suggestion in the case that John was subject to call at all times during the day so that his employment did not end until the last moment of August 31. Whenever his employment ended, even if it was at the last moment of the day, at that same moment his employment ceased; it was brought to an end; it came to an end. There is no dispute over the fact that August 31 was the final day of his employment; consequently, when a proper definition of the statute is applied, it is clear that his employment ceased on August 31, not September 1.

The petitioner attempts to present this case as involving a conflict between the statute and the regulations and requiring us to choose between them. Without doubt, if there were such a conflict, we would be guided by the statute; but if the statute and the regulations are properly construed, there is in fact no conflict between them.

The statute and the regulations use different language and different means of expressing the rule, but both reach the same result. If we recognize that John ceased to be an employee of United States Steel on August 31, 1960, then we apply the statutory rule by beginning counting on September 1, and the 3-month period ended on Novem-

ber 30. On the other hand, if we apply the regulations, we count backward beginning with November 30, 1960, and ending on September 1 of that year. Thus, although the statutory rule counts forward from the day after he ceases to be an employee, and the regulatory rule counts backward from the day before the day of his death, both reach the same result—under both applications of the rule, John would not have qualified for the favorable tax treatment of section 421 if he had exercised the option on December 1, the day of his death.

Before now, no one has suggested that there was a conflict between the statute and the regulations. The regulations were first adopted in 1952. The statutory provision was reenacted in 1954, with no indication that anyone involved in the legislative process considered the regulatory interpretation improper. The same regulatory interpretation was again adopted and remained in effect throughout the years. Furthermore, when the revision of the stock option provisions was adopted as a part of the 1964 Revenue Act, the statutory provision was changed to use the "look-back" rule, and the accompanying committee report indicated that the employment requirement was identical and described it by using language similar to the regulatory interpretation. In so doing, Congress indicated that it considered the regulations and the statute to have the same effect. This longstanding approval of the regulations—both implicit and explicit—indicates to me that people have generally considered them not to be in conflict with the statute.

The majority opinion attempts to reconcile the statute and the regulations by modifying the clear language of the regulations. However, if the statute is properly construed, such modification is unnecessary. The clear language of the regulations and the longstanding assumption that it means the same as the statute confirms my understanding of the statutory expression "within 3 months after the date he ceases to be an employee."

SCOTT, *J.*, agrees with this dissent.